FRANCES L. LAZELL *vs.* WENDELL BOARDMAN et als.

Waldo.    Opinion December 17, 1907.

*Measurements.   Statute Mile.   Marine Mile.   Historical Works as Evidence.*

The plaintiff claimed title to the southwestern of the two Ensign Islands in West Penobscot Bay, under a quitclaim deed from the land agent of the State of Maine dated January 3, 1879, purporting to convey to her, "all the right, title and interest that the said state may have in any and all the islands hereinafter specified situated in Penobscot Bay in said state of Maine." Among the several islands enumerated in said deed were the said Ensign Islands. The defendants entered said southwestern island and cut and carried away certain growing trees standing thereon and thereupon the plaintiff brought an action of trespass quare clausum to recover damages therefor. The vital question involved was that of title. Among other things it was contended in defense that the said island claimed by the plaintiff was included in the Muscongus Grant, executed sometime between 1620 and 1635 ; and, by the Articles of Separation from Massachusetts, never became the property of the State of Maine. It was conceded that the Muscongus Grant included the said island claimed by the plaintiff if within three miles of the main land. It was also agreed that the said island claimed by the plaintiff, if measured by statute miles, is more than three miles from the main land and therefore became the property of the State of Maine by the aforesaid Articles of Separation ; but if measured by geographical or marine miles, that it is less than three miles from the main land, and consequently became a part of the Muscongus Grant and was never owned by the State of Maine. *Held :* That the three mile limit should be measured by the marine mile.

In this case, three historical works, " Williamson's History of Maine," " Williamson's History of Belfast " and "Farrow's History of Islesboro " were used in evidence and were properly so used and were entitled to such weight as authorities as they might have on the question whether or not the aforesaid island is within the boundary of the Muscongus Grant, but that weight, if any, is but little.

On report.    Judgment for defendants.

Trespass quare clausum brought by the plaintiff against the defendants to recover damages for cutting and carrying away trees from the southwestern of the two Ensign Islands in West Penobscot Bay in Waldo County.    Plea, the general issue with brief statement as follows :

"1.    That the title to the premises described in the writ is not in the plaintiff, but is in the defendant, Wendall Boardman.

· "2.    That the plaintiff had not any title to the real estate described in her writ, and was not in the lawful possession thereof, at the time of the alleged acts of trespass contained in her writ."

Tried at the September term, 1906, of the Supreme Judicial Court, Waldo County.    At the conclusion of the evidence, and by agreement of the parties, the case was reported to the Law Court to render such judgment as the law and the legally admissible evidence required.

All the material facts are stated in the opinion.

The "Muscongus Grant," now known as the "Waldo Patent," as printed in volume 10, folio 237, of the "York Deeds," which said volume was published under the authority of chapter 181 of the Resolves of 1893, is as follows :

"To all to whom these Presents Shall Come Greeting Know ye yt ye Counsell established at the Plimouth in ye County of Devon for ye planting Ruling Ordering and Governing of New England in America for Divers good Causes & Considerations them thereunto especially moving Have given granted Bargained Sold Enfieffed allotted and Sett over & by these presents do Clarly & absolutely give grant Bargaine Sell alliene enfiffe allott & assigne & Confirm unto John Beauchamp of London Gentlemen, & Thomas Leverett of Boston in ye County of Lincorn gent their heirs associates & assigns all & Singular those lands Tenement & Hereditments whatsoever with ye appurtenances thereof in New England aforesd which are Cittuate Lying & being within or between a place thence Commonly Called or known by ye name of Musrongruss towards ye South orr Southwest & a strait line Extending from thence directly ten Leaugs — up — into ye Maine land & Contains thence toward ye great Sea Commonly Called ye South Sea & ye utmost Limits of ye space ten Leauges — — — — on ye North & North East — of a River in New England aforesd Commonly Called Penobscott Towards ye North & Northeast & ye great Sea Commonly Called ye westarn ocean, towards ye east & astait & direct line extending from ye most westeran part & Point of ye Sd Straight line which extends from

Mecongoss aforesd towards ye South Sea to ye uttermose Northeram limmits of ye Sd ten leagues on ye North side of ye Sd River of, Penobscott towards ye west & all land & ground wood Soiles River waters Fishings Herredittments Profitts Commodityes Priviledges Fraimchises — & Emoliments whatsoever Situate Lying & being arising happening or Remaining or which Shall arise or Remain within ye Limmits & bounds aforesd or any of them together with all Sd land yt ly & be within ye Space of Three miles within ye Space of Sd land & pmisses or any of them to have & to hold all & Singulary ye Sd land Teniments & hereditments & pmisses whatsoever with ye appurtenances & every part & parcell thereof unto ye Sd John Beauchamp & Thomas Leverett their heirs associates & assigns forever to their only proper & absolute use & behoofe of ye sd Jno Beauchamp & Thos Leverett their heirs associates & assigns forevermore to be Holden of ye Kings most Excellent Majesty & Successors as of his manner of East Greenwich by ffealtie only & not in Capite nor by length of Service Yielding & paying unto his majesty his heirs & Successors ye fifth part of all Such Oare of Gold & Silver yt Shall be gotten & obtained in or upon ye pmisses or any part thereof In Witness whereof ye Sd Counsell established at Plymoth in ye County of Devon for ye Planting Ruling ordering and Governing of New England in America have hereunto putt ye Common Seal ye Thirteenth day of March in ye first year of ye Reign of Our Soveraign Lord Charls by ye Grace of God King of England Scotland France & Ireland Defender of ye Faith &c. Anno Domini 1629

(Seal)　　"R. Warwick"

*Cilley & Burpee,* for plaintiff.
*Dunton & Morse,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, JJ.

SPEAR, J. This is an action of trespass quare clausum, to recover damages for cutting and carrying away some trees from the

southwestern of the two Ensign Islands in West Penobscot Bay in the County of Waldo.

The vital question involved in the case is that of title. The plaintiff claims under a quitclaim deed from the land agent of the State of Maine, dated January 3, 1879, purporting to convey to her, "all the right, title and interest that the said State may have in any and all the islands hereinafter specified situated in Penobscot Bay in said state of Maine." Among the several islands enumerated were the Ensign Islands, one of which included the locus in quo. Wendell Boardman, one of the defendants, claims title to the same island by virtue of a tax deed from the town of Islesboro dated November 16, 1889, purporting to convey said island to him.

Several defenses are set up, which if all maintainable, would but operate to effect a nonsuit upon technical grounds without necessarily solving the question of title. Inasmuch therefore, as this question, a determination of which will settle the rights of the parties, is put in issue and fully argued, we deem it inexpedient to discuss any of the defenses set up and calculated to work a defeasance only of the present form of action, and advisable to consider the real question at issue, whether the title was in the plaintiff. We shall not attempt to go further than this, as the plaintiff must recover upon the strength of her own title, and, if it appears that she has none, must fail. Where the title of the island may be is another question which we do not undertake to determine.

As already observed, the plaintiff sought to establish her title by the presentation of a quitclaim deed from the State. Assuming that this deed would vest in the plaintiff whatever title the State, at the time, had in the locus, the defendants say it conveyed nothing to the plaintiff, because the State had no title in the island in question, to convey. In support of this contention, they present evidence of the Muscongus Grant, later known as the Waldo Patent, which they say included the island in question, and that therefore the island never became the property of the State. A statement of this grant is found in Farrow's History of Islesboro, as follows: "In 1620 King James I. of England granted about all of the continent of North America to forty noblemen, knights and gentlemen,

who were styled 'The Council of Plymouth, in Devon, England.' This Council surrendered its charter in 1635 (having been out-generaled by the Massachusetts settlers). Before surrendering it they made several grants of land within the State of Maine, which held good. One of these grants was known as the Muscongus Grant, now known as the Waldo Patent, which had in it, by estimation, nearly one thousand square miles."

It is not claimed that the State acquired any title to any part of the territory or islands included in the Muscongus Grant or Waldo Patent.

It is conceded by counsel upon both sides that the Muscongus Grant or Waldo Patent included the island in question if within three miles of the main land.

It is likewise agreed that the island, if measured by statute miles, is more than three miles from the main land and therefore became the property of the State by the articles of separation from Massachusetts; and, if measured by geographical or marine miles, that it is less than three miles from the main land, and consequently became a part of the Muscongus Grant or Waldo Patent, and was never owned by the State.

The plaintiff contends that inasmuch as the Muscongus Grant was a land grant, it should be measured in statute miles by the surveyor's chain. On the contrary, the defendants claim that inasmuch as the three mile limit was over the sea, it should be measured by the log in the miles adapted to the measurement of the sea. Which measurement did the parties to the grant intend? We find nothing in the grant itself which sheds any light upon this question.

Nearly two hundred years afterwards when some question arose as to the location of Long Island, now called Islesboro, in a petition by certain citizens to the general court of Massachusetts, praying for a survey, they spoke of having had reliable *chain* men sworn to make the survey, that is, the distance from the main land to the center of Islesboro. But the suggested use of the chain by these men who perhaps had never heard of the difference between a statute and marine mile, is entitled to no weight in the determination of this question.

No case was cited and we are unable to find any decision that settles the question before us.   Our only criterion therefore for the conclusion at which we arrive, is found in the reason and logic of the situation and the support of an analogous rule promulgated by the court of our own State.

The Plymouth Grant was made in 1620 and the Muscongus Grant sometime between 1620 and 1635.   The statute or English mile was adopted as the standard of land measurement in the 35th year of the reign of Elizabeth, 1593.   The log was invented about the same time which inaugurated measuring of the sea or marine miles, known as English geographical miles.   The statute mile measures 5280 feet on the land ; the sea mile, knot, geographical or marine mile measures 6086.7 feet on the sea, on the scale of 60 geographical or sea miles to a degree.

It would therefore appear that the statute mile for measuring the land, and the marine mile for measuring the sea by the use of the log, were established and went into use at about the same time in England, and somewhere from thirty to forty years before the grant in question was made.   It is then reasonable to infer that all the parties to these grants, made so soon after the adoption of·these different measurements for the land and for the sea, must have been familiar with the purposes for which these different standards were used, and it is not unreasonable to assume that they contemplated these measurements to be practically applied, each kind to be adapted to its own sphere, the statute to the land, the marine to the sea.

In defining the distance to which the grant should extend and cover the islands in the sea, it used simply the word "miles."   To interpret the meaning of the word "mile" when its use is capable of two applications, our first inquiry would naturally be as to what subject of measurement it was intended to be applied ; if to the land, we should at once say statute miles to be measured by the chain ; if to the sea, we should as readily say marine, to be measured by the log.   Each kind of measurement being thus adapted to its own sphere.

As a matter of fact and common information all measurements

upon the land and sea, so far as we have any knowlege of them, are made in accordance with the scheme of adaptability. All maps are measured by statute, and all charts by marine, miles. The reason for this is plain. It is impracticable to measure the land by the log or the sea by the chain. It was just as impracticable when the Muscongus Grant was made as it has been during all the intervening years down to the present time. Our conclusion therefore is, that the three mile limit should be measured by the marine mile.

This conclusion we think is fully sustained so far as the reasoning and logic of the opinion are parallel, by *Rockland, Mt. Desert & Sullivan Steamboat Co.* v. *Fessenden*, 79 Maine, 140.

With respect to the suggestion that naturally arises in a case of this kind that the sea mile might be reduced to a land mile, Chief Justice PETERS in the opinion, says: "It is said that the navigator may reduce his sea mile to a land mile and be in accord with that mile in that way. It has not often been done and cannot by ordinary men be easily done. . . . The statute mile is adopted only in England and the United States, while the marine mile is known and acted upon by all the civilized people of the globe," and thus this suggestion was condemned.

Three historical works, Williamson's History of Maine, Williamson's History of Belfast and Farrow's History of Islesboro, were properly used in evidence. McKenzie on Evidence, page 26; Abbott's Trial Evidence, page 833; *State* v. *Wagner*, 61 Maine, 178. These three authorities all concur in locating the island in question within the boundary of the Waldo Patent, therefore so far as the authorities are entitled to any weight, and in our view they have but little upon this question, they are in confirmation of the theory of measurement herein adopted.

In accordance with the stipulation in the report, the court are of the opinion that the entry must be,

*Judgment for defendants.*